**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IMAGE PROCESSING TECHNOLOGIES, LLC, § § § *Plaintiff*, § § v. § § SAMSUNG ELECTRONICS CO., LTD., § SAMSUNG ELECTRONICS AMERICA, § INC., § § *Defendants*. § | Case No. 2:20-cv-00050-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is Defendants Samsung Electronics Co., Ltd.'s and Samsung Electronics America, Inc.'s (collectively, "Samsung") Motion to Exclude Portions of the Testimony of Image Processing's Damages Expert Mr. Paul C. Benoit ("Motion"). **Dkt. No. 26**. The Motion seeks to exclude Plaintiff Image Processing Technologies, LLC's ("IPT") damages expert Mr. Benoit's opinions as to a reasonable royalty, both of Mr. Benoit's supplements, and both his original and new effective royalty rate opinions. Dkt. No. 26 at 19.

After due consideration, the Court **DENIES** Samsung's Motion.

**I.    BACKGROUND**

The Motion, including briefing, was filed in the present case on March 10, 2020. The Motion was originally filed in Case No. 2:16-cv-00505-JRG ("Original Action"), which was stayed on October 17, 2017 pending completion of *Inter Partes* Review ("IPR") involving the asserted patents. *Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd. et al.*, 2:16-cv-00505-JRG, Dkt. No. 356 at 1-2. The present case is severed from the Original Action.

Timeliness concerns relate to the filing dates and docket control orders issued in the Original Action. A timeline of key events follows.

On February 13, 2017, during discovery in the Original Action, IPT served a set of contention interrogatories to Samsung. Dkt. No. 17-2. These interrogatories included IPT's Interrogatory No. 20, which requests that Samsung identify non-infringing alternatives. *Id.* at 3-4.

On March 15, 2017, Samsung served an initial response to IPT's Interrogatory No. 20. Dkt. No. 17-3 at 4-6. This response denied any infringement and incorporated its responses to IPT's Interrogatories No. 8, 9, and 11. *Id.* at 5-6. Regarding IPT's Interrogatory No. 8, Samsung's response to IPT's Interrogatory No. 20 asserted that it describes "why Samsung's Accused Instrumentalities are non-infringing alternatives to claimed inventions of the asserted claims." *Id.* Regarding IPT's Interrogatory No. 11, Samsung's response to IPT's Interrogatory No. 20 asserts "components provided by licensed suppliers are themselves licensed and therefore constitute non-infringing alternatives." *Id.* at 18. The response to IPT's Interrogatory No. 20 did not directly identify any non-infringing alternatives. *Id.*

Samsung also served a response to IPT's Interrogatory No. 3. Dkt. No. 24-8 at 6-22. IPT's Interrogatory No. 3 sought identification of third-party suppliers for elements in or for the accused features. *Id.* at 6. Samsung's response to IPT's Interrogatory No. 3 identified multiple third-party suppliers, including FotoNation. *Id.* at 8-22. IPT's Interrogatory No. 3 was not referenced in Samsung's response to IPT's Interrogatory No. 20.

On June 16, 2017, Samsung served an amended response to Interrogatory No. 20. Dkt. No. 17-4. This amended response additionally incorporated by reference deposition testimony

but was otherwise identical and again did not directly identify any non-infringing alternatives. *Id.* at 4-6.

On June 30, 2017, IPT served opening expert reports. Dkt. No. 26 at 6. These reports included those of Dr. Zavadsky and Dr. Bovik, IPT's technical experts, and Mr. Benoit, IPT's damages expert. *Id.*

On July 26, 2017, Samsung served rebuttal expert reports. These reports included Mr. Tate's rebuttal damages expert report (Dkt. No. 14-2) and Dr. Stevenson's rebuttal technical expert report (Dkt. 17-5). Dr. Stevenson's report included three paragraphs dedicated to available alternatives. *Id.* at ¶¶ 76-78. The report did not directly identify any non-infringing alternatives. *Id.* The report did state, "I will discuss the technical details of these alternatives in a supplement to this report, consistent with the schedule in this case." *Id.* at ¶ 76.

On August 22, 2017, IPT served Corrections to Report of Paul C. Benoit along with exhibits ("Mr. Benoit's Correction Report"). Dkt. No. 26 at 7, *see* Original Action, Dkt. No. 215-30 and 215-31. IPT was permitted by the Court to supplement opening damages expert reports, but only to the extend necessary to address deposition testimony of Samsung witnesses Kolhatkar and Moraro and their deadline to do so was July 5, 2017. Original Action, Dkt. No. 161 at 2.

On August 25, 2017, Samsung served Dr. Stevenson's supplemental rebuttal expert report. Dkt. No. 17-6. This supplemental report was consistent with the schedule in the Original Action, which had an August 25, 2017 deadline in which "Samsung may serve its . . . rebuttal technical and damages witness expert disclosures related to design-arounds and non-infringing alternatives." Original Action, Dkt. No. 195 at 3. Dr. Stevenson's supplemental rebuttal expert report identified FotoNation as a non-infringing alternative. Dkt. 17-6 at 10.

On September 7, 2017, IPT issued Supplement to the Expert Report of Paul C. Benoit ("Mr. Benoit's First Supplemental Report). Dkt. 17-8. This supplemental report addresses the supplemental reports of Dr. Stevenson and Dr. Bovik and the potential impact, including regarding FotoNation, on damages. *Id.* Of these reports, IPT's "Third Supplemental Expert Report of Dr. Alan C. Bovik" asserts that the non-infringing alternatives in Dr. Stevenson's supplemental rebuttal expert report, including FotoNation, would not have been acceptable alternatives. Dkt. 17-7 at 6.

On September 9, 2017, Samsung filed the present Motion in the Original Action. Dkt. No. 26. On September 15, 2017, IPT filed their Conditional Motion for Leave in the Original Action. Dkt. No. 17.

## II.     LEGAL STANDARD

### a. Expert Testimony

Federal Rule of Evidence 702 permits expert witness testimony if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. The district court "ensur[es] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 579-80 (1993). Relevance is a low bar. Evidence is relevant if: (a) it has any tendency

to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

Regarding reliability, part of that inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The burden is on the party offering the expert testimony to establish admissibility by a preponderance of the evidence. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

However, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015), citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### b. Royalties

Patent damages opinions must "reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Estimating a reasonable royalty is not an exact science, and there may be more than one reliable method for estimating a reasonable royalty. *Summit 6,* 802 F.3d at 1315.

A party may use the royalty rate from sufficiently comparable licenses, value the infringed features based upon comparable features in the marketplace, or value the infringed features by comparing the accused product to non-infringing alternatives. *Id* at 1296. Challenges

to the factual accuracy of a benchmark go to evidentiary weight, not admissibility. *Apple*, 757 F.3d at 1319.

Accounting for the differences between real-world licenses negotiated under the uncertainty of infringement and validity is proper in a reasonable royalty analysis. *St. Lawrence Communications LLC v. ZTE Corp. et al.*, 2:15-cv-00349-JRG, Dkt. No. 441 at 4 (E.D. Tex. Feb. 21, 2017). It is rational and economically sensible due to infringement and validity uncertainty that a damages expert should give an opinion that the rates should be increased. *Mondis Tech., Ltd. v. LG Electronics, Inc.*, 2011 U.S. Dist. LEXIS 78482, at *23 (E.D. Tex. June 14, 2011); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("[A] reasonable royalty may permissibly reflect the fact that an infringer had to be ordered by a court to pay damages rather than agreeing to a reasonable royalty.").

### III.   ANALYSIS

#### a.  Motion to Strike Expert Testimony

Samsung's Motion moves to exclude and strike certain opinions of Mr. Benoit, IPT's damages expert. Dkt. No. 26 at 5. These requested exclusions are: (1) Mr. Benoit's methodology for calculating "price premium" (*Id.* at 5), (2) Mr. Benoit's Corrected Report (*Id.* at 5-6), (3) Mr. Benoit's "effective royalty rates" in Mr. Benoit's Corrected Report (*Id.* at 18), (4) Mr. Benoit's "effective royalty rates" in Mr. Benoit's original damages report (*Id.* at 19), (5) Mr. Benoit's First Supplemental Report (*Id.*), and (6) Mr. Benoit's "reasonable royalty rates" (*Id.* at 13).

#### b.  Motion to Strike: Price Premium

Samsung argues that Mr. Benoit's methodology for calculating a price premium, which serves as the foundation for his calculation of a reasonable royalty, should be excluded as irrelevant and unreliable. *Id.* at 8. Mr. Benoit's methodology compares two similar products: the

Samsung L73, which included Samsung's Intelligent Face Recognition technology, and the Samsung L700, which did not. Dkt. No. 26-5 at 47, ¶ 88. The Samsung L73 was priced at a $50 premium above the Samsung L700. *Id.* By isolating feature differences through other product comparisons, Mr. Benoit estimated the value of feature differences between the Samsung L73 and L700 to determine an estimated price premium for Samsung's Intelligent Face Recognition. *Id.* at 47-50, ¶ 88-94.

Samsung's argument that Mr. Benoit's methodology is irrelevant is based on a distinction between the valuation of face detection as a whole and the incremental benefit of the patented technology. Samsung asserts that because the L73 is not an accused product and that it is undisputed that the Intelligent Face Recognition technology does not practice the patents-in-suit, the price premium for Samsung's Intelligent Face Recognition is irrelevant. Dkt. No. 26 at 8-11. Samsung argues that Mr. Benoit conceded that the patents are not directed to face detection as a whole, but to alleged incremental improvements to the processing of captured images, and that Mr. Benoit does not attempt to quantify or value any of these alleged incremental benefits. *Id.* at 9-10. Samsung continues by noting that patent damages opinions must "reflect the value attributable to the infringing features of the product, and no more." Dkt. 26 at 10, quoting *Ericsson*, 773 F.3d at 1226.

In *Rembrandt Wireless*, the Federal Circuit rejected a similar argument made by Samsung and held that it was appropriate for the plaintiff's expert to use comparable technology in determining incremental value associated with infringing technology. *Rembrandt Wireless Technologies, LP v. Samsung Electronics. Co., Ltd.*, 853 F.3d 1370, 1380 (Fed. Cir. 2017). Samsung argues that *Rembrandt Wireless* involved damages analyses based on valuations of use of the patents in infringing features. Dkt. No. 26-16 at 4. However, Samsung has not cited any

binding authority imposing a restriction that an expert's analysis be limited to only infringing products.

Relevance is a low bar. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Mr. Benoit's opinions regarding a price premium for face-detection technology easily meet this bar. Samsung's criticisms go to the weight of the evidence, not its admissibility. The appropriate avenue for addressing challenges to Mr. Benoit's price premium opinion is Samsung's own damages expert report and cross-examination.

Samsung argues that Mr. Benoit's method of isolating feature differences through product comparisons to estimate a feature's value and ultimately an estimated price premium for Samsung's Intelligent Face Recognition is unreliable, comparing it to a "complicated pyramid scheme." Dkt. No. 26 at 11. This "complicated pyramid scheme" is said to be a sequence of price subtractions and substitutions akin to the substitution method taught in ninth grade Algebra I courses. *See* Dkt. No. 26-5 at 47-50, ¶ 88-94.

Samsung argues that the unreliability in Mr. Benoit's method arises from the determination of which features to value and which to ignore, and how one faulty determination gets carried through the rest of the analysis. Dkt. No. 26 at 11-12. Samsung attempts to illustrate the method's unreliability by noting that Mr. Benoit assigns no value to the Samsung NV40's superior resolution in Mr. Benoit's comparison of the Samsung NV40 and NV4. *Id.* at 12. Samsung then proceeds to use a $50 price premium, a value supplied by Samsung, and uses it to show how the methodology would result in a negative value for the L73's Face Recognition. *Id.* This illustration fails to consider the possibility that Samsung's $50 price premium for the superior resolution could be an improper valuation. This possibility is increased when

considering IPT's assertion that Samsung's own damages expert Mr. Tate assigned a zero-dollar value to the Schneider-Kreuznach lens contained in the NV7, which has a 7x zoom capability, over the lens in the NV3, which has a 3x zoom capability. Dkt. No. 26-2 at 14.

Mr. Benoit's use of IPT's expert's facts and not Samsung's expert's facts does not make his method unreliable. If one were to assume a theoretically perfect assignment of values to other differences between the cameras, then Mr. Benoit's substitution methodology would in turn produce a theoretically perfect valuation of face detection functionality. Furthermore, Mr. Benoit's methodology of valuing the infringed features based upon comparable features in the marketplace has already been endorsed by the Federal Circuit. *Summit 6*, 802 F.3d at 1296 (Fed. Cir. 2015); *Apple*, 757 F.3d at 1315.

This evidentiary dispute does not rise to the level of methodology reliability, but rather a challenge of fact reliability. Accordingly, Mr. Benoit's price premium methodology will not be excluded on a *Daubert* basis.

### c. Motion to Strike: Mr. Benoit's Corrected Report

In Samsung's Motion, Samsung cites the transcript of the August 24, 2017 video deposition of Mr. Benoit. Dkt. No. 26 at 14. Samsung replicates 189:5-9 in Footnote 6: "Q. Right. And Exhibit N2 in your – what you're calling a corrected report is actually a new report, there is no Exhibit N2 in your original report, correct? A. Correct.". *Id.*, *see* Original Action Dkt. No. 215-35. Exhibit N2 is a table indicating the Percent of Units Utilizing Patents-in-Suit with a simple calculation involving payment and royalty rate to determine total past units and using total past units and total units to calculate units using patents. Original Action, Dkt. No. 215-31 at 62. This simple calculation adjusting the number of products that allegedly practiced the

Asserted Patents is a minor update that does not lead to *Daubert* exclusion. There is no fundamental change to theory or methodology here.

### d. Motion to Strike: Mr. Benoit's Corrected Report Effective Royalty Rates

Mr. Benoit's adjustment for assumption of validity and infringement is proper in a reasonable royalty analysis. *St. Lawrence Communications*, Dkt. 441 at 4 (E.D. Tex. Feb. 21, 2017). It is rational and economically sensible due to infringement and validity uncertainty that a damages expert should give an opinion that the rates should be increased. *Mondis*, 2011 U.S. Dist. LEXIS 78482 at *23; *see also ResQNet.com*, 594 F.3d at 872 ("[A] reasonable royalty may permissibly reflect the fact that an infringer had to be ordered by a court to pay damages rather than agreeing to a reasonable royalty."). This adjustment is both relevant and reliable and will not be excluded under a *Daubert* analysis.

### e. Motion to Strike: Mr. Benoit's Original Report Effective Royalty Rates

Samsung argues that Mr. Benoit's original analysis of effective royalty rates is unreliable and should be excluded. Dkt. No. 26 at 19. Samsung points to two examples. *Id.* One is what Samsung calls Mr. Benoit's assumption that all five camera manufacturer licensees sold the same 13% of cameras employing face detection over the entire life of the patents, which Samsung asserts Mr. Benoit abandons in his corrected exhibits. *Id.* The second is that Samsung says Mr. Benoit relies on an IPT interrogatory response to value patents Canon, Sony, and Panasonic assigned to IPT as part of their payment. *Id.*

Essentially, Samsung complains that Mr. Benoit uses different underlying facts than they would. These are not criticisms of methodology. Accordingly, the Court will not be excluding Mr. Benoit's original analysis of effective royalty rates on a *Daubert* basis.

### f. Motion to Strike: Mr. Benoit's First Supplemental Report

Samsung asserts that Mr. Benoit's First Supplemental Report is premised upon the opinions of IPT's technical expert Dr. Bovik. Dkt. No. 26 at 17. Samsung is concurrently moving to exclude Mr. Bovik's new opinions on the grounds that they are unreliable and procedurally improper. Dkt. No. 25. Samsung argues that if Mr. Benoit's First Supplemental Report should be excluded because Mr. Bovik's opinions should be excluded. Dkt. No. 26 at 17.

The Court is not determining the admissibility of Mr. Bovik's opinions in this order. If the Court decides to strike Mr. Bovik's opinions as unreliable, then Mr. Benoit's testimony will be required to be limited to the same extent. At this time, none of Mr. Benoit's First Supplemental Report will be excluded under *Daubert*.

### g. Motion to Strike: Reasonable Royalty Rates

Samsung argues that Mr. Benoit's reasonable royalty rate analysis relies on his price premium analysis, and that because the reasonable royalty rates rely on irrelevant and unreliable price premiums the reasonable royalty rates should be excluded as irrelevant and unreliable as well. Dkt. No. 26 at 8-9. The Court recognizes that Mr. Benoit's reasonable royalty rate analysis depends on his price premium analysis, but the Court also rules that Mr. Benoit's price premium analysis is sufficiently relevant and reliable. Accordingly, the Court rules that Mr. Benoit's reasonable royalty rate analysis likewise is sufficiently relevant and reliable and will not be excluded under *Daubert*.

### IV. CONCLUSION

In sum, the Court finds that none of the objected to expert testimony warrants exclusion. The appropriate response to the challenges to Mr. Benoit's testimony is not *Daubert* exclusion but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Therefore, the Court **DENIES** Samsung's Motion.

**SIGNED this 14th day of May, 2020.**

                                                   ROY S. PAYNE
                                                   UNITED STATES MAGISTRATE JUDGE