IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IMAGE PROCESSING TECHNOLOGIES, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:20-cv-00050-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff Image Processing Technologies, LLC's ("IPT") *Daubert* Motion to Exclude the Testimony of Michael E. Tate ("Motion"). **Dkt. No. 14**. IPT's Motion seeks to exclude opinions from Samsung's damages expert Michael E. Tate ("Mr. Tate").

After due consideration, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion. In addition, the Court **DENIES** IPT's motion *in limine* No. 8, which requests the Court to preclude Samsung from discussing certain alleged non-infringing alternatives.

### I.  BACKGROUND

The Motion, including briefing, was refiled in the present case on March 10, 2020. The Motion was originally filed in Case No. 2:16-cv-00505-JRG ("Original Action"), which was stayed on October 17, 2017 pending completion of Inter Partes Review ("IPR") involving the asserted patents. Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd. et al., 2:16-cv-00505-JRG, Dkt. No. 356 at 1-2. The present case is severed from the Original Action. Timeliness concerns relate to the filing dates and docket control orders issued in the Original Action.

On July 26, 2017, Samsung served rebuttal expert reports. These reports included the expert report of Michael E. Tate ("Original Tate Report"). Dkt. No. 14-2. The present Motion, first filed in the Original Action on September 9, 2017, seeks to strike portions of the Original Tate Report.

In the years since then, much has changed. The only live patent claim in this case is Claim 1 of U.S. Patent No. 6,959,293 (the "'293 Patent"). Dkt. No. 1 at 7. Samsung no longer asserts invalidity as a defense in this case. Dkt. No. 67 at 2. The Court has found several motions that were filed in the Original Action, and then re-filed in the present action, moot. Dkt. No. 125, Dkt. No. 139, Dkt. No. 153.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 permits expert witness testimony if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. The district court "ensur[es] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 579-80 (1993). Relevance is a low bar. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

Regarding reliability, part of that inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The burden is on the party offering the expert testimony to establish admissibility by a preponderance of the evidence. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

However, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015), citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. ANALYSIS

IPT's Motion moves to exclude and strike certain opinions of Mr. Tate, Samsung's damages expert. Dkt. 14 at 5. Those requested exclusions are: (1) Mr. Tate's analysis of IPT's licenses due to alleged artificial depreciation, (2) Mr. Tate's failure to assume validity and infringement and use of downward adjustments, (3) Mr. Tate's discussion of established profitability of products made under the patent, (4) Mr. Tate's reliance on assertedly incomparable license agreements for the second *Georgia-Pacific* factor, (5) Mr. Tate's opinions on alleged non-infringing alternatives disclosed unclearly during discovery, (6) Mr. Tate's reliance on his own opinions and testimony from a prior suit by IPT against Canon, and (7) Mr. Tate's position on *Georgia-Pacific* factors 9 and 10 for allegedly failing to conduct any economic analysis of the patented technologies' benefits.

### a. License Depreciation

IPT argues that Mr. Tate's analysis of IPT's licenses is flawed for not considering any value attributable to "defect.detect" technology in the hypothetical license. Dkt. No. 14 at 7-10. This argument relates to a Canon license for a $9 million payment, with $6 million of that related to the defect.detect feature in Canon digital camera products. *Id.* at 7. IPT asserts that it is wrong for Mr. Tate's method to ignore that the licensee licensed the patents for all purposes, not just some features. *Id.* at 8.

Samsung counters that the $6 million payment in the Canon license is a separate "contingent" lump sum payment only if an arbitrator determined that Canon's products using defect.detect technology could be found to be an infringing use. Dkt. 14-10 at 5-6. Samsung argues that since prior licenses are "almost never perfectly analogous", expert testimony relying on such licenses "must account for such distinguishing facts when invoking them to value the patented invention." *Id.* at 7, quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

The first of IPT's disputes here relates to Mr. Tate's conclusions, not methodology. Although IPT frames this concern as a methodology issue in not counting the $6 million portion related to defect.detect, the decision not to count the $6 million portion is a conclusion about its role in the hypothetical negotiation. This conclusion is best addressed through cross-examination. The request to strike these opinions is **DENIED**.

### b. Downward Adjustments

IPT also argues that Mr. Tate's counterbalancing of the upward adjustment for an assumption of validity and infringement that would exist in a hypothetical negotiation with downward factors without quantification is "junk science." Dkt. No. 14-10 at 8-9. The *Georgia-*

*Pacific* analysis "is a flexible one". *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 2016 WL 4523883, at *3 (E.D. Tex. Aug. 29, 2016). Mr. Tate concludes that the value attributable to a presumption of validity and infringement is counterbalanced by the Canon license's inclusion of additional patents and products. To whatever degree this is or is not a weak conclusion, the proper avenue for response is cross examination, not exclusion. The request to strike these opinions is **DENIED**.

### c. Product Profitability and Extent of Use

IPT asserts that Mr. Tate's discussion of *Georgia-Pacific* factor 8, established profitability of the products made under the patent, is unreliable and should be excluded. Dkt. No. 14 at 11. IPT argues that "an accused device may have incurred an operating loss during the period of alleged infringement, yet still generated an incremental benefit from use of the invention," and that accordingly statements about operating losses or profits are "bald" and not tied to the *Georgia-Pacific* factor requirements. Dkt. No. 14 at 12.

Samsung counters that IPT is conflating *Georgia-Pacific* factors 8 and 11 with 13, which Mr. Tate addresses elsewhere in his report. Dkt. No. 14-10 at 12. Samsung notes that while IPT has made an argument that an accused device may still generate an incremental benefit from use, IPT does not show what impact this has or how it would call into question Mr. Tate's analysis. *Id.*

In their reply, IPT chooses to stand on its opening brief and not address these issues further. Dkt. No. 14-12 at 6. This is best addressed by cross examination, not exclusion. The request to strike these opinions is **DENIED**.

### d. Non-comparable Licenses

This issue is partially mooted by IPT's motion *in limine* 14. Dkt. No. 171 at 5. Samsung is not precluded from presenting the six non-comparable licenses, but the dollar amounts from these licenses shall be redacted. *Id.* These licenses are the Dicam, Inc., e.Digital Corporation, Minerva Industries, Inc., Walker Digital, LLC, InMotion Imagery Technologies, LLC, and Alex is the Best, LLC licenses. *Id.*

The Adrian and Cutting Edge license agreements were technologically compared to U.S. Patent Nos. 5,831,669, 8,467,672, and 9,485,403, all patents that are not asserted in the present case. Dkt. No. 15-9 at 28-29. Dr. Stevenson provides no technological comparison to the '293 Patent, the only patent at issue in the present case. The Court accordingly struck the Adrian license and the Cutting Edge license from the Rebuttal Technical Expert Report of Prof. Robert Louis Stevenson in a prior order, and likewise the Court **STRIKES** reference to the Adrian and Cutting Edge license from Mr. Tate's opinions and precludes Mr. Tate from relying on them at trial.

### e. Alleged Non-Infringing Alternatives Not Clearly Disclosed at Discovery

IPT asserts that Mr. Tate's testimony relying on alleged non-infringing alternatives should be excluded as Samsung did not clearly identify them in interrogatory responses. Dkt. No. 14 at 14-15. This issue is discussed thoroughly in a previous order. Dkt. No. 123.

Samsung did not clearly identify the discussed alleged non-infringing alternatives in their response to IPT's Interrogatory No. 20, but there was indirect identification through their response to IPT's Interrogatory No. 3 while considering their response to IPT's Interrogatory No. 20. The Court granted leave to IPT to supplement expert reports in a previous order (Dkt. No. 123), and finds this does not justify striking the alleged non-infringing alternatives. Dr. Zavadsky

analyzed the allegedly non-infringing FotoNation code and Mr. Benoit has been granted the opportunity to respond to these alleged non-infringing alternatives. Accordingly, the court **DENIES** the motion to strike these opinions. Furthermore, the Court **DENIES** IPT's motion *in limine* No. 8, which requests the Court preclude Samsung from discussing these alleged non-infringing alternatives.

### f. Reliance on Work in Prior Litigation

IPT asserts that Mr. Tate's reliance on his testimony from the prior Canon litigation should be excluded. Dkt. No. 14 at 15-16. IPT argues that Mr. Tate's opinions from the Canon case are not relevant and based on materials not produced in this litigation and to which IPT has no access. *Id.* at 16.

In Samsung's reply it argues more about the reasons to strike Mr. Benoit's testimony relying on Bradford Kullberg's opinions, and their only counterargument is that "[i]f Mr. Kullberg's testimony from the Canon case is relevant, then obviously Mr. Tate's opinions are as well." The Court has precluded Mr. Benoit from referencing Mr. Kullberg's opinions from IPT's prior litigation against Canon in a partial grant of Samsung's motion *in limine* No. 1. Dkt. No. 171 at 6-7. Therefore, the Court **GRANTS** the request to preclude Mr. Tate from relying on any opinions from the Canon case that were not properly disclosed in his report in this case.

### g. Economic Analysis of Benefits of Patented Technology

IPT asserts that Mr. Tate's report is devoid of any economic analysis of revenue and profit that Samsung may have derived from use of the Patents-in-Suit. Dkt. No. 14 at 16. Almost immediately afterwards, IPT then asserts that Mr. Tate does conduct analysis in rebuttal of Mr. Benoit, but that the analysis is flawed. Dkt. No. 14 at 17. IPT uses Mr. Tate's conclusion that a

Schneider-Kreuznach 7x optical zoom lens caused the price of the digital camera to decrease by $29.45. *Id.*

This argument is the other side of the coin argued in Samsung's motion to strike Mr. Benoit's opinion. Just as Samsung's dispute was with Mr. Benoit's conclusions of value regarding this substitution analysis, IPT's dispute here is with Mr. Tate's conclusions of value. The two experts are using the same analytical technique, but with different assumptions and conclusions as to feature values. Mr. Tate's conclusion that face detection does not drive revenue is based on this same analytical technique, and IPT's arguments should be made through cross-examination, not a *Daubert* motion. The request to strike these opinions is **DENIED**.

### IV. CONCLUSION

Accordingly, the Court **STRIKES** reference to the Adrian and Cutting Edge licenses from Mr. Tate's opinions, precludes Mr. Tate from relying on the Adrian and Cutting Edge licenses at trial, and precludes Mr. Tate from relying on any opinions from the Canon case that were not properly disclosed in his report in this case. The motion is otherwise denied.

Furthermore, the Court **DENIES** IPT's motion *in limine* No. 8, which requests the Court preclude Samsung from discussing above discussed alleged non-infringing alternatives.

**SIGNED this 22nd day of June, 2020.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE